MESSNER REEVES LLP
Charles C. Cavanagh (CA State Bar No. 198468)
Bradley G. Grumbley (CA State Bar No. 265265)
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone: (303) 623-1800
Facsimile: (303) 623-0552

E-mail: ccavanagh@messner.com
        bgrumbley@messner.com

Attorney for Defendants
CHIPOTLE MEXICAN GRILL, INC.
and CHIPOTLE SERVICES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LUCIA CORTEZ,<br><br>    Plaintiff,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC.;<br>CHIPOTLE SERVICES, LLC; and<br>DOES 1 to 50, inclusive<br><br>    Defendants. | Case No.: 17-cv-4787<br><br>**NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441 & 1446 BY DEFENDANTS CHIPOTLE MEXICAN GRILL, INC. AND CHIPOTLE SERVICES, LLC**<br><br>Removal Date: June 29, 2017<br>Trial Date:    Not Set |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE THAT Defendants Chipotle Mexican Grill, Inc., and Chipotle Services, LLC ("Chipotle"), by and through undersigned counsel, hereby remove this action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. In support of such removal, Chipotle states as follows:

---

1. <u>Complaint Filed May 19, 2017</u>. On May 19, 2017, Plaintiff Lucia Cortez commenced this civil action by filing a Complaint in the Superior Court of the State of California for the County of Los Angeles, captioned Lucia Cortez, Plaintiff v. Chipotle Mexican Grill, Inc.; Chipotle Services, LLC; and Does 1 to 50, inclusive, Defendants, Case No. PC057763. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. <u>Chipotle was served on May 30, 2017</u>. Chipotle Mexican Grill, Inc. and Chipotle Services, LLC were served by personal service on May 30, 2017. Chipotle Mexican Grill, Inc. is a Delaware corporation with its principal place of business in Colorado. Chipotle Services, LLC is a Colorado limited liability company whose sole member is Chipotle Mexican Grill, Inc. A copy of the Summonses are attached hereto as **Exhibit B**.

3. <u>Chipotle Answered the Complaint on June 29, 2017</u>. Chipotle filed its Answer to the Complaint in the Los Angeles County Superior Court on June 29, 2017. A true and correct copy of that Answer is attached hereto as **Exhibit C**.

4. <u>Other Filings</u>. Plaintiff also served Chipotle with copies of the Civil Case Cover Sheet, Notice of Case Management Conference, Notice of Case Assignment, and Alternative Dispute Resolution Information Packet on May 30, 2017. Copies of those documents are attached hereto as **Exhibit D**.

5. There are no other documents of which Chipotle is aware that are on file with the Los Angeles County Superior Court in this action.

6. <u>Removal Timely</u>. This Notice of Removal is timely filed within 30 days of Chipotle being served with the Complaint.

7. The action was pending in the Los Angeles County Superior Court, which court is in the territory of the United States District Court for the Central District of California.

8. <u>Diversity Jurisdiction Proper</u>. This matter is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a), and is one which may be

removed to this Court by Chipotle pursuant to 28 U.S.C. § 1441(a), in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. <u>Diversity of Citizenship Exists Between Parties</u>. Plaintiff at all relevant times was domiciled and a resident of the State of California. (Complaint, ¶ 1, attached hereto as **Exhibit A**.) As discussed in detail below, Chipotle is a citizen of the States of Delaware and Colorado. Therefore, diversity of citizenship exists and supports removal under 28 U.S.C. § 1332(a). Although the Complaint names "Doe" defendants, for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

10. <u>Defendants are Citizens of Delaware and Colorado</u>. Both defendants in this action are diverse from the Plaintiff. For diversity purposes, the citizenship of a limited liability company is determined by examining the citizenship of each member of the company. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1021-1022 (11th Cir. 2004). For the reasons set forth below, Chipotle Mexican Grill, Inc. is a defendant in this action and is diverse as it is a Delaware corporation with its principal place of business in Colorado. (Complaint, ¶ 3.) Chipotle Services, LLC is also a defendant in this action and is diverse because it is a Colorado limited liability company whose sole member is Chipotle Mexican Grill, Inc., a Delaware Corporation. (*Id.*)

11. <u>Defendant Chipotle Services, LLC is a limited liability company</u>. Defendant Chipotle Services, LLC is a limited liability company organized under the laws of Colorado whose sole member is Chipotle Mexican Grill, Inc. (Declaration of Esther Smiley ["Smiley Decl."], ¶ 5, attached hereto as **Exhibit E;** *see also* Complaint, ¶ 3.) Because, for the reasons explained below, Chipotle Mexican Grill, Inc. is a citizen of the States of Delaware and Colorado, Chipotle Services, LLC is also a citizen of the States of Delaware and Colorado. (*Id.*)

12. <u>Defendant Chipotle Mexican Grill, Inc. is a Delaware Corporation.</u> A corporation is a citizen both of the state in which it is incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c). Chipotle Mexican Grill, Inc. is incorporated under the laws of Delaware. (*See* Smiley Decl., ¶ 6, attached hereto as **Exhibit E**; *see also* Complaint, ¶ 3.)

13. <u>Defendant Chipotle Mexican Grill's Principal Place of Business is in Colorado</u>. Under the "nerve center" test articulated in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010), a corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* at 1186 (citing *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986); *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959)). As explained below and in the attached Declaration of Esther Smiley, Chipotle's high-level officers direct, control and coordinate the corporation's activities throughout the United States and internationally from its corporate headquarters in Denver, Colorado.

14. Chipotle is headquartered at 1401 Wynkoop Street, Suite 500, Denver, Colorado 80202. (*See* Smiley Decl. at ¶ 7; *see also* Complaint, ¶ 3.) Chipotle and its affiliates employ approximately 150 people at the corporation's headquarters in Denver, Colorado. (*See id.*) As explained in detail below, the majority of Chipotle's executive officers and principal decision-makers are headquartered in, and work from, its Denver offices. (*See id.* at ¶¶ 13-26.)

15. Although Chipotle does maintain a few other offices in other parts of the United States, each such office serves a limited purpose and houses a relatively small number of employees. (*See id.* at ¶¶ 8-12.)

16. There is a presumption that Chipotle's principal place of business is located at its Denver headquarters. *See Friend*, 130 S. Ct. at 1192 (a corporation's "'principal place of business' … in practice … should normally be the place where the corporation maintains its headquarters") & 1193-94 ("A corporation's 'nerve center,'

usually its main headquarters, is a single place."; "A 'nerve center' approach, which ordinarily equates that 'center' with a corporation's headquarters…."); *Wisconsin Knife Works*, 781 F.2d at 1282 ("In the absence of any reason to think that Black & Decker's principal place of business might be in Illinois or Delaware, the two states of which the Defendant is a citizen, the fact that its headquarters is in Maryland warrants an inference that the parties are of diverse citizenship.").

17.   In addition to serving as its headquarters, Chipotle's Denver offices are also its "nerve center" because it is the place from which its "high level officers direct, control, and coordinate the corporation's activities." *Friend*, 130 S. Ct. at 1186.

18.   Although, as of December 31, 2016 (the date reported in Chipotle's most recently filed Form 10-K), Chipotle operated more than 2,000 restaurants throughout the United States, as well as in Canada, England, France and Germany (*see* Smiley Decl., ¶ 30), the operations of those restaurants are directed, controlled and coordinated by the high-level officers resident in the corporation's Denver headquarters. Where, as with Chipotle, "'a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective.'" *Friend*, 130 S. Ct. at 1191 (quoting *Scot Typewriter Co.*, 170 F. Supp. at 865).

19.   Chipotle's principal decision makers are its executive officers, executive directors, board of directors, executive team directors, and executive regional directors. (*See* Smiley Decl., ¶ 13.)

20.   Each of Chipotle's five primary executive officers has offices in and works from the corporation's Denver headquarters, with two of them also working part of their time from a small executive office in New York City. (*See id.* at ¶¶ 13-19 .) Chipotle's Chief Executive Officer is the principal executive officer of the organization and is responsible for the total management of Chipotle by facilitating the operation of its

business while guiding its officers and employees in furtherance of the company's objectives. (*See id.* at ¶ 15.) Chipotle's Chief Executive Officer splits his time between the Denver headquarters and a small executive office located in New York, New York. (*See id.*) Chipotle's Chief Financial Officer – who is the corporation's principal financial and accounting officer and is responsible for all financial, accounting and reporting functions of Chipotle, as well as for overseeing training, safety, security and risk for the entire organization – works from an office in the corporation's Denver headquarters. (*See id.* at ¶ 16.) Chipotle's Chief Marketing and Development Officer – who is responsible for crafting Chipotle's marketing direction and message, deepening its relationship with customers and continuing to attract new customers, and who oversees all advertising and promotional programs (including print, outdoor, transit and radio advertisements), in-store communications and design elements (such as menus and signs) – splits his time between the corporation's small executive office in New York City and its headquarters in Denver. (*See id.* at ¶ 17.) Chipotle's Chief Digital and Information Officer is responsible for managing the company's technological innovations, including the development of the company's digital and mobile ordering platforms and strategy. The Chief Digital and Information Officer is based in Denver. (*See id.* at ¶ 18.) Chipotle's Chief Restaurant Officer oversees restaurant operations for Chipotle's North American restaurants. The Chief Restaurant Officer is based in Denver. (*See id.* at ¶ 19.)

21.   Chipotle and its affiliates also employ two Restaurant Support Officers, who are responsible for the overall restaurant operations within their respective regions. (*See id.* at ¶ 20.) Both of the Restaurant Support Officers are based in Denver, but spend the majority of their time working in the field and traveling between the restaurants in his or her respective regions. (*See id.*)

22.   Three of Chipotle's four executive directors have offices in and work from the corporation's Denver headquarters. (*See id.* at ¶¶ 21-25.) Chipotle's Executive Director of Food Safety is responsible for overseeing the overall food safety plan,

throughout the United States and internationally, and works from an office in the corporation's Denver headquarters. (*See id.* at ¶ 24.) Chipotle's Executive Director of Supply Chain & Safety, is responsible for overseeing the procurement of food ingredients, equipment and supplies for all Defendants restaurants, and managing and mitigating all potential sources of risk to the company, its employees and its assets, and works from an office in the corporation's Denver headquarters. (*See id.* at ¶ 22.) Chipotle's Executive Director – Financial Planning & Analysis is responsible for Chipotle's financial planning, budgeting and providing financial analysis support for the organization's operations and support departments, and works from an office in the corporation's Denver headquarters. (*See id.* at ¶ 23.) Chipotle's Executive Director of Marketing is responsible for overseeing marketing operations and implementing marketing strategies. He works from a small executive office at 126 Fifth Avenue, New York, New York 10011. (*See id.* at ¶ 25.)

23. Chipotle's board of directors consists of twelve members, including the corporation's CEO. (*See id.* at ¶ 26.) The members of Chipotle's board of directors are responsible for adopting policies to support the company's values and to provide good corporate governance for the entire corporation. (*See id.*) Chipotle's board of directors typically meets three or four times per year in Denver, Colorado, and one time per year in some other, varying location. (*See id.*)

24. Chipotle and its affiliates also employ in each of the eleven regions into which its restaurant operations are divided (i.e., Rocky Mountain, Pacific North, Pacific South, Central South, Central North, Southwest, Southeast, Mid-Atlantic, Mid-America, Northeast North and Northeast South) an Executive Team Director who is responsible for business operations in his or her region. There is one Executive Team Director in each of the eleven regions. Each Executive Team Director reports to one of four Executive Regional Directors. The Executive Regional Directors report to one of two Restaurant Support Officers. (*See id.* at ¶ 27.) Each of the Executive Team Directors spends the significant majority of his or her time working at, and traveling between, the

restaurants in his or her respective region, rather than working from a fixed office location.

25. In addition, Chipotle's Customer Service department is located in its Denver headquarters. (*See id.* at ¶ 29.)

26. Thus, the Denver corporate headquarters of Chipotle is not simply an office where the corporation holds its board meetings or where its principal decision makers can work when they happen to be in Colorado. (*See id.* at ¶ 32; *see also Friend*, 130 S. Ct. at 1192 [A corporation's "'principal place of business' … should normally be the place where the corporation maintains its headquarters – provided that the headquarters is … not simply an office where the corporation holds its board meetings…."].)

27. Although Chipotle and its affiliates together employ over 60,000 people and operate more than 2,000 restaurants throughout the United States, as well as in Canada, England, France and Germany, almost all of the company's high-level officers who direct, control and coordinate its activities work from the Denver headquarters, with two of the executive officers splitting their time between Denver and New York City, one of the executive officers splitting his time between Denver and Illinois and the two Restaurant Support Officers spending the majority of their time in the field. (*See* Smiley Decl., ¶ 30.) Of the corporation's several principal decision makers, only one Executive Team Director and an Executive Regional Director live in California, but even they spend much of their time traveling throughout that State. (*See id.* at ¶ 28.) As such, virtually all of Defendant's core executive and operational functions are carried out from its Denver headquarters, and, to a much lesser extent, from its small offices in New York City and Illinois. (*See id.* at ¶ 31.) With the exception of some accounting functions that are performed by employees in Columbus, Ohio, Defendant's major administrative functions are conducted in its Denver headquarters, as well. (*See id.*)

28. These facts demonstrate that Chipotle's "nerve center" is its Denver headquarters. *See Friend*, 130 S. Ct. at 1186 ("To support its position [that its "nerve

center" was in New Jersey], Hertz submitted a declaration by an employee relations manager that … stated that the 'leadership of Hertz and its domestic subsidiaries is located at Hertz's 'corporate headquarters' in Park Ridge, New Jersey; that its 'core executive and administrative functions … are carried out' there and 'to a lesser extent' in Oklahoma City, Oklahoma; and that its 'major administrative operations … are found' at those two locations."); *Scot Typewriter Co.*, 170 F. Supp. at 864 ("The executive offices of the defendant are located in New York; its president and Chairman of the Board, three of five Vice-Presidents, its Treasurer and Assistant Treasurer, Secretary, Comptroller, Director of Dealer Sales and Director of Installment Sale Collections all maintain offices there. Basic policy decisions are made in the New York office. The personnel, industrial relations, public relations, purchasing, rental and general services, general office sales, international, advertising and sales promotion departments are all headquartered in New York. Customer relations with respect to service, credit, and accounting, affecting sales wherever made, are administered from New York.").

29. <u>The Amount in Controversy Exceeds $75,000.00</u>. For the Court to have original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs.

30. The amount in controversy can be determined from the allegations or prayer of the complaint. *See St. Paul Mercury Indem. Co. v. Red Cab Co.* 303 U.S. 283, 289 (1938). A general conclusory allegation by the plaintiff is sufficient to show that damages exceed the minimum jurisdictional amount of $75,000. *See K. Durant Enterprises, LLC v. Swanson Travel Professionals, Inc.*, 2014 WL 545843, *2 (C.D. Cal 2014).[1] Because Defendant can demonstrate by a preponderance of the evidence

---

[1] Defendant does not concede that Plaintiff is likely to prevail on any of the asserted claims or that, if Plaintiff does prevail on any of the asserted claims, she is entitled to any wages, benefits, damages, punitive damages, attorneys' fees or other relief. Defendant reserves the right to dispute, and to defend against, the asserted claims, both with regard to liability and all forms of requested damages and relief. *See Lewis v. Verizon Comm., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (to establish the jurisdictional amount, a removing defendant need not concede liability for that amount).

1  that the amount in controversy exceeds $75,000, removal is proper. 28 U.S.C. §
2  1446(c)(2)(B).

3       31.    In her Complaint, Plaintiff expressly seeks to recover "back pay, front pay,
4  lost benefits, and emotional distress in an amount to be determined at trial, plus punitive
5  damages, resulting in **an amount not less than $250,000.00.**" (*See* Complaint, ¶¶ 32,
6  37, 39, 45 and Prayer at p. 12, attached hereto as **Exhibit A** (emphasis added)).

7       32.    Additionally Plaintiff alleges that her employment was terminated on
8  December 10, 2016. (*See* Smiley Decl., ¶ 36). As of her alleged termination, Plaintiff
9  was scheduled to be paid a base salary of $15.47 per hour and was a full-time employee.
10 (*See id.* at ¶ 36). An hourly salary of $15.47 working full-time, estimated at 40 hours per
11 week equates to $32,177.60 per year. Therefore, assuming Plaintiff's rate of pay
12 remained consistent, her damages for her lost wages from December 10, 2016, through
13 the date of this Notice of Removal would be approximately $17,945.20. By the time this
14 case is resolved at trial, no likely earlier than June 2018 (a year from the date this Notice
15 is filed), Plaintiff's unmitigated lost wages could amount to over $50,122.80.

16      33.    In addition to alleged lost wages, Plaintiff claims to be entitled to recover
17 compensatory damages, monetary damages to compensate for the emotional distress
18 suffered by Plaintiff, punitive damages, prejudgment and post-judgment interest accrued
19 to date, costs of suit incurred, and for attorneys' fees and costs pursuant to California
20 Government Code § 12965(b). (*See* Complaint, ¶¶ 32, 37, 39, 45 and Prayer at p. 12,
21 attached hereto as **Exhibit A**.), which, taken together, yield a total amount in
22 controversy well in excess of $75,000.

23      34.    Plaintiff alleges that she is entitled to recover her attorneys' fees. (*See*
24 Complaint, ¶¶ 32, 37, 39, 45 and Prayer at p. 12, attached hereto as **Exhibit A**.) Where
25 such fees are demanded, they are properly included in calculating the amount-in-
26 controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). If
27 counsel for Plaintiff's hourly rate is conservatively estimated at $300, one attorney
28 would reach $30,000 in the first 100 hours of work on this case. Plaintiff is represented

- 10 -

**NOTICE OF REMOVAL OF
DEFENDANTS CHIPOTLE MEXICAN GRILL, INC. AND CHIPOTLE SERVICES, LLC**

by three lawyers: Green, Spurgeon, and Stein. (*See* Complaint Caption, attached hereto as **Exhibit A**.) Three attorneys incurring at least 100 hours of fees per attorney through trial, would equal no less than $90,000 in attorneys' fees at the very least.

35. Plaintiff also alleges that she is entitled to recover punitive damages (*See* Complaint, ¶¶ 32, 37, 39, 45 and Prayer at p. 12, attached hereto as **Exhibit A**.) Claims for punitive damages are included in calculating the amount in controversy. *See Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F. 2d 785 (9th Cir. 1963). While California law does not provide any specific guidance regarding the amount of punitive damages which may, or should, be awarded under Civil Code section 3294, the proper amount of punitive damages under California law is based on the reprehensibility of the defendant's misdeeds, the ratio between compensatory and punitive damages and ratio between damages and the defendant's net worth. *See Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357 (9th Cir. 1994).

36. Damages allegations similar to those being made by Plaintiff in this action have been held sufficient to satisfy the amount in controversy requirement. *See White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003) (holding that it was facially apparent that plaintiff's wrongful termination claim exceeded $75,000, based on his "lengthy list of compensatory and punitive damages," including loss of pay, impaired earning capacity, emotional distress, etc., combined with a claim for attorneys' fees and punitive damages); *Aucina v. Amoco Oil Co.*, 871 F. Supp. 332 (S.D. Iowa 1994) (the defendant-employer showed that the amount in controversy exceeded the minimum for diversity jurisdiction where former employee asserted claims for lost wages, lost benefits, mental anguish and punitive damages).

37. Indeed, specific jury verdicts in employment cases in California indicate that verdict awards well in excess of the jurisdictional requisite have been awarded to plaintiffs (including hourly employees with minimal or no economic damages) in cases alleging harassment, discrimination, retaliation and wrongful termination:

a. *McCarthy v. R.J. Reynolds Tobacco Co.*, No. 09 CV 2495 (WBS), USDC Eastern District of California, June 12, 2011: awarding each of two plaintiffs $150,000 in compensatory damages and $250,000 in punitive damages in connection with their sexual harassment and retaliation claims (awards subsequently reduced by trial court to $100,000 each in compensatory damages and $200,000 each in punitive damages).

b. *Ventura v. ABM Indus., Inc.*, No. BC372347, California Superior Court, County of Los Angeles, July 23, 2010: $100,000 in emotional distress and $25,000 in civil penalties awarded against employer in connection with claims for sexual battery and intentional infliction of emotional distress.

c. *Paterson v. Cal. Dept. of General Svcs.*, No. 05 CV 00827 (MCE), USDC Eastern District of California, April 14, 2008: $70,000 economic damages, $500,000 emotional distress, $257,500 non-economic damages and $4,137,500 punitive damages jury award in employment action alleging sexual assault and sexual harassment (punitive damages award subsequently reduced to $300,000 by trial court).

d. *Sornia v. El Centro Elementary School District*, 285 Fed. Appx. 337 (9th Cir., April 8, 2008), affirming No. CV-04-00332-JTM, USDC Southern District of California: $400,000 in emotional distress damages and $32,500 in punitive damages awarded in employment action alleging sexual harassment.

e. *Pande v. Chevron Corp.*, No. C-04-5107 CW, USDC Northern District of California, October 29, 2007: $2,500,000 for punitive damages in case involving retaliation and wrongful termination.

f. *Alvarado v. Federal Express Corp.*, No. C-04-0098 SI, USDC Northern District of California, May 21, 2007: $300,000 in lost earnings; $250,000 in other damages, including emotional distress; and $2,450,000 in punitive damages in connection with claims of sexual harassment, retaliation and constructive

**NOTICE OF REMOVAL OF**
**DEFENDANTS CHIPOTLE MEXICAN GRILL, INC. AND CHIPOTLE SERVICES, LLC**

discharge (punitive damages award subsequently reduced to $300,000 by trial court).

g. *Hernandez v. South Gate*, No. BC312104, California Superior Court, County of Los Angeles, May 17, 2007: $10,400,000 awarded to four plaintiffs alleging discrimination and wrongful termination (largely for emotional distress).

h. *Gibbs v. Boeing Satellite Systems Inc.*, No. B178913, California Court of Appeal, October 23, 2006: $540,000 in damages for pain and suffering, $850,000 in attorney fees in case alleging retaliation and wrongful termination ($103,000 award for punitive damages vacated on appeal).

38. When the potential costs of special damages, compensatory damages, punitive and exemplary damages, attorneys' fees and costs and expenses are added to Plaintiff's allegations of damages "in an amount not less than $250,000.00," it becomes "more likely than not" that the amount at issue for Plaintiff in this lawsuit far exceeds the minimum amount required for diversity jurisdiction. *See Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860 (9th Cir. 1996).

Dated: June 29, 2017

MESSNER REEVES LLP

By: _____
Charles C. Cavanagh
Bradley G. Grumbley
Attorneys for Defendants

NOTICE OF REMOVAL OF
DEFENDANTS CHIPOTLE MEXICAN GRILL, INC. AND CHIPOTLE SERVICES, LLC