**THE GREEN LAW GROUP, LLP**
Scott Thomas Green, SBN 82220
      SCOTT@THEGREENLAWGROUP.COM
Jamie N. Stein, SBN 219761
      JAMIE@THEGREENLAWGROUP.COM
Matthew T. Bechtel, SBN 260450
      MATTHEW@THEGREENLAWGROUP.COM
1777 E. Los Angeles Avenue
Simi Valley, California 93065
Tel: (805) 306-1100 | Fax: (805) 306-1300

Attorneys for Plaintiff LUCIA CORTEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCIA CORTEZ, an individual,<br><br>                Plaintiff,<br>vs.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Denver corporation; CHIPOTLE SERVICES, LLC, a Colorado limited liability company; and DOES 1 through 20, inclusive,<br><br>                Defendants. | Case No. 2:17-CV-04787-GW(JPRx)<br><br>ASSIGNED TO THE HONORABLE GEORGE H. WU<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>Trial Date: February 12, 2019<br>Pretrial Conference: January 31, 2019 |

THE GREEN LAW GROUP, LLP

# TABLE OF CONTENTS

**Page**

I.   **STATEMENT OF FACTS** ................................................................... 1

   a.   Ms. Cortez' Employment and Work Performance at Chipotle. .................... 1

   b.   Chipotle's Leave Policies and Practices. ........................................ 1

   c.   Ms. Cortez' Miscarriage, Related Depression, and Approved Leave. ......... 2

   d.   Chipotle's Intent to Terminate Ms. Cortez in November 2016. .................. 3

   e.   Chipotle's Grant of Additional Leave. ........................................... 3

   f.   Chipotle's Rescission of Leave, Request for Medical Certification, and

Termination. ............................................................................... 5

   g.   Chipotle's Stated Reasons for Ms. Cortez' Termination. ........................ 6

II.   **POINTS OF LAW** ....................................................................... 6

   a.   Ms. Cortez Will Establish a Prima Facie Case for Discrimination, and

Present Evidence that Chipotle Discriminates Against Employees who Seek

PDL Leave. ................................................................................ 6

   b.   Chipotle Cannot Rebut the Presumption of Discrimination Because It Has

Not Alleged a Lawful Basis for Ms. Cortez's Termination. ............................ 8

      i.   Overview of FMLA, CFRA, and PDL Leave. ................................ 9

      ii.   Ms. Cortez Could not Lawfully be Terminated Based on Chipotle's

Need to Fill her Position Because She Was on a Job Protected Leave When

She Was Terminated, and She Requested Additional Leave for which She was

Eligible. ……............................................................................ 10

      iii.   Ms. Cortez Could not Lawfully be Terminated for Failure to

Provide Medical Certification Because She Provided Medical Certification

Upon Chipotle's Requests, and Chipotle Never Informed her That the

Documents Provided Were Inadequate. ........................................... 12

THE GREEN LAW GROUP, LLP

**THE GREEN LAW GROUP, LLP**

iv.   Ms. Cortez Could not Lawfully be Terminated for Failure to Provide a Fitness for Duty Certification...........................................................13

c.   Chipotle Cannot Pursue its Avoidable Consequences Doctrine Affirmative Defense................................................................................................13

III.   **CONCLUSION** ...........................................................................15

THE GREEN LAW GROUP, LLP

# TABLE OF AUTHORITIES

<u>**Page**</u>

**Cases**

*Liu v. Amway Corp.*,
   347 F.3d 1125 (9th Cir. 2003) ..................................................................10, 11

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)..........................................................................................7, 8

*Moore v. Regents of Univ. of Cal.*,
   248 Cal. App. 4th 216 (2016) ...........................................................................7, 8

*Noyes v. Kelly Servs.*,
   488 F.3d 1163 (9th Cir. 2007) ............................................................................7

*Rosenfeld v. Abraham Joshua Heschel Day School, Inc.*,
   226 Cal. App. 4th 886 (2014) ...........................................................................14

*State Dept. of Health Services v. Superior Court*,
   31 Cal.4th 1026 (2003) .....................................................................................14

**Statutes**

29 U.S.C. § 2601 ....................................................................................................9

29 U.S.C. § 2611 ....................................................................................................9

29 U.S.C. § 2612 ....................................................................................................9

Cal. Gov. Code § 12900..........................................................................................9

Cal. Gov. Code § 12945..........................................................................................9

Cal. Gov. Code § 12945.2............................................................................9, 10, 11

**Regulations**

29 C.F.R. § 825.214 ..............................................................................................10

29 C.F.R. § 825.302 ..............................................................................................10

29 C.F.R. § 825.305 ..............................................................................................12

29 C.F.R. § 825.312 ..............................................................................................13

Cal. Code Regs. tit. 2, § 11035 ...............................................................................9

Cal. Code Regs. tit. 2, § 11042 ...................................................................9, 11

Cal. Code Regs. tit. 2, § 11043 ........................................................................10

Cal. Code Regs. tit. 2, § 11045 ........................................................................11

Cal. Code Regs. tit. 2, § 11046 ........................................................................12

Cal. Code Regs. tit. 2, § 11050 ........................................................................11

Cal. Code Regs. tit. 2, § 11089 ........................................................................10

Cal. Code Regs. tit. 2, § 11091 .................................................................10, 12

Cal. Code Regs. tit. 2, § 11096 ........................................................................11

**THE GREEN LAW GROUP, LLP**

THE GREEN LAW GROUP, LLP

## I.   STATEMENT OF FACTS

### a.   Ms. Cortez' Employment and Work Performance at Chipotle.

Ms. Cortez began her career at Chipotle in 2009 as a crew member.  She was subsequently promoted to kitchen manager, and then service manager, and again to apprentice (assistant store manager).  Ms. Cortez worked an average of 50 hours a week, and she has never received a verbal or written warning or any other type of discipline.  Ms. Cortez worked at multiple stores during her employment, and was working at the Granada Hills location during all times relevant to this lawsuit.

Ms. Cortez received only positive reviews from her managers during her employment.  In or about February 2017 (about a year after this lawsuit was filed), Chipotle produced two unsigned reviews dated July 5, 2015, and August 5, 2016.  These reviews were not contained in or produced with the rest of her personnel file, nor were they ever presented to Ms. Cortez.  The reviews are generally positive, but contain some negative comments.

### b.   Chipotle's Leave Policies and Practices.

Chipotle is a large international company headquartered in Colorado.  Chipotle provides its employees with up to 12 weeks of leave pursuant to the federal Family & Medical Leave Act of 1993 ("FMLA"), and generally informs its employees of their right to take FMLA leave as required by federal law.  Chipotle also provides its employees with up to 12 weeks of leave pursuant to California Family Rights Act ("CFRA"), which mirrors FMLA, except it does not cover certain pregnancy related disabilities.  Chipotle maintains a human resources portal called "Workday" that allows employees and their managers to place employees on FMLA leave.

Chipotle does not provide its employees with leave under California's Pregnancy Disability Leave ("PDL") law, which allows an employee to take up to 17 and 1/3 weeks of leave if she is disabled by pregnancy, childbirth, or a related medical condition.  Chipotle's compliance department is aware that PDL exists,

**THE GREEN LAW GROUP, LLP**

but they do not provide statutorily required notices of the right to take PDL, nor do they include PDL as a leave option that is accessible to employees and managers in its Workday system.  Chipotle is not aware of any employee being placed on PDL leave from 2013 through 2018.

### c.  Ms. Cortez' Miscarriage, Related Depression, and Approved Leave.

On September 16, 2016, Ms. Cortez began showing symptoms of a miscarriage while at work.  After completing her 9-hour shift, she went to the Kaiser emergency room.   The following two days, September 17th and 18th, were her normal days off.  On September 19, 2016, Ms. Cortez exchanged text messages with her supervisor, area manager David "Scotty" Shadix, and advised him that she was not feeling ok, was awaiting test results, and that her treating ER physician placed her off work for September 19th and 20th.  Later that day she received lab confirmation that she had a miscarriage.

On September 20, 2016, Ms. Cortez called Mr. Shadix and advised him of her miscarriage.  Neither Mr. Shadix, nor anyone else at Chipotle, provided Ms. Cortez with the statutorily required notice of her rights under PDL.  That same day, Mr. Shadix caused Ms. Cortez to be placed on a leave under FMLA for "birth of a child."  Mr. Shadix acknowledges that her leave was for her miscarriage, and claims he chose "birth of a child" because that was the closest option he had in Chipotle's Workday system.

Chipotle's benefits department prepared an internal memorandum, dated September 20, 2016, addressed to Ms. Cortez related to her FMLA leave.  The memorandum contained a "Designation Notice" that stated: (1) Ms. Cortez was approved for 12 weeks of FMLA leave; (2) Ms. Cortez was not required to provide medical certification for her leave request; and (3) Ms. Cortez was not required  to present a fitness-for-duty certificate in order to be restored to employment at the end of her leave.  Ms. Cortez was not provided a copy of the memorandum until after she was terminated and this litigation commenced.  Ms. Cortez was

subsequently placed on concurrent CFRA leave, even though childbirth is not qualifying basis for CFRA leave.

On September 26, 2016, Ms. Cortez was treated by Alexander Wong, a Kaiser Ob/Gyn.  Dr. Wong thought Ms. Cortez was showing signs of depression, referred her to Kaiser's mental health department, and recommended she be off work through September 30, 2016, so she could be evaluated.

Ms. Cortez saw a psychologist on October 27, 2016, which was the first available appointment.  Kaiser's mental health department evaluated Ms. Cortez using standardized psychological tests, which consistently determined Ms. Cortez was suffering severe depression and general anxiety related to her miscarriage. Ms. Cortez was referred to a psychiatrist for evaluation and treatment.

On November 1, 2016, Ms. Cortez was evaluated by a psychiatrist.  She was diagnosed with depression and generalized anxiety disorder, and was prescribed Prozac.  The psychiatrist also recommended intensive group therapy, which she declined due to her fear of group settings.

During her approved leave, it was difficult for Ms. Cortez to do basic functions, such as getting out of bed, keeping track of days, or making basic decisions such as ordering from a menu.  At times she was unable to maintain personal nutrition and hygiene.

      d.  <u>Chipotle's Intent to Terminate Ms. Cortez in November 2016.</u>

On November 7, 2016, Mr. Shadix asked Chipotle's human resources department if he needed to wait for Ms. Cortez' leave to expire before he could terminate her.  Ms. Shadix again made a similar inquiry on December 5, 2016, when a full-time assistant store manager began work to replace Ms. Cortez.

      e.  <u>Chipotle's Grant of Additional Leave.</u>

Chipotle and Ms. Cortez never had an agreed upon return date.  Based on the internal memorandum prepared by Chipotle, Ms. Cortez's last day of leave was December 10, 2016, which is her normal day off.  Based on FMLA's rules

- 3 -

THE GREEN LAW GROUP, LLP

THE GREEN LAW GROUP, LLP

regarding the calculation of leave, Ms. Cortez's last day of leave would have been December 11, 2016, which is also her normal day off.  On December 5, 2016, Mr. Shadix filled Ms. Cortez's position with another full-time assistant manager (called an "apprentice" by Chipotle).

On December 7, 2016, Ms. Cortez emailed Kaiser to schedule an appointment with her psychiatrist "ASAP."  The earliest available appointment was January 16, 2017.

On December 8, 2016, Ms. Cortez received a voicemail from Chipotle's Employee Services Center ("ESC") stating that her leave expires in 5-7 days, and that if she needed an extension, she should contact her manager for approval before calling the ESC.  At 3:37 p.m., Ms. Cortez called the Granada Hills store and requested to speak to her general manager, Brian Palafox, to request an extension. At Mr. Shadix's direction, Mr. Palafox refused to take the call.  At 3:42 p.m., Ms. Cortez called Mr. Shadix to request an extension.  He told her to put the request in writing.  At 3:51 p.m., Mr. Shadix sent Ms. Cortez a text message with his email address.  At 4:22 p.m., Ms. Cortez sent Mr. Shadix an email requesting an extension of her leave because her next psychiatrist appointment was on January 16, 2017, and that she was told by Chipotle's third-party administrator that she must be released before she can return to work. Ms. Cortez kept calling Kaiser to request an earlier appointment, and was eventually given an appointment on January 11, 2017.

On December 9, 2016, at 4:36 a.m., Mr. Shadix forwarded Ms. Cortez' email to his supervisor and Chipotle's benefits department.  At 7:54 a.m., he received a response from the benefits department stating that her leave expires today, and that "[i]f you can no longer hold her position for her, you may proceed with termination" or you can allow the extension.  At 11:37 a.m., Mr. Shadix sent an email to Ms. Cortez stating that he forwarded her extension request to benefits and will be in touch once he has something to report.  The email did not mention

**THE GREEN LAW GROUP, LLP**

1   that he already received a response, nor did he state that he was not approving the

2   leave.  At 1:11 p.m., Mr. Cortez called the ESC and was granted an extension

3   through January 23, 2017.

4          f.   <u>Chipotle's Rescission of Leave, Request for Medical Certification,</u>

5             <u>and Termination.</u>

6       On December 12, 2016, Mr. Shadix left Ms. Cortez a voicemail indicating he

7   had an update.  Ms. Cortez returned his call, and was told that she must return by

8   the end of the week or be terminated.  Ms. Cortez informed him that her leave was

9   extended through January 23, 2017.  Mr. Shadix then emailed Chipotle's

10  compliance department, and was directed to contact Ms. Cortez and advise her that

11  ESC can't extend leave without his approval, and that that he needs to terminate

12  her since leave expired and they cannot hold her job because Chipotle needs its

13  leaders in the restaurants.  At that time, Ms. Cortez was still eligible for 5 and 1/3

14  weeks of PDL leave, and was eligible for at least two additional weeks of CFRA

15  leave.

16      On December 13, 2016, at 6:30 p.m., Mr. Shadix called Ms. Cortez and

17  informed her that her additional leave was rescinded because he did not approve it,

18  and that she must return to work by the end of the week or be terminated.  Ms.

19  Cortez again informed Mr. Shadix that Chipotle's third-party administrator told her

20  she cannot work until she's cleared.  Mr. Shadix believed that the request for

21  medical clearance might be related to a workers compensation claim, and

22  requested that Ms. Cortez provided medical documentation.  At 6:56 p.m., Ms.

23  Cortez sent Mr. Shadix a text message requesting he add her to the work schedule.

24  Mr. Shadix responded with a text stating "Let's stick with original plan" of sending

25  medical documentation.

26      On December 14, 2016, at 7:58 a.m., Mr. Shadix emailed Chipotle's

27  compliance department and stated that Ms. Cortez claimed that her doctor removed

28  her from work due to work stress.  At 9:20 a.m., Mr. Shadix emailed Ms. Cortez

and stated that he talked to support teams about her questions, and said that she must provide medical documentation by that afternoon. Ms. Cortez replied by email at 11:31 a.m., and provided Mr. Shadix with her Kaiser medical records. On December 14, 2016, Ms. Cortez also called ESC to complain that she is on leave until January 23, but her area manager is telling her to come back Friday or be terminated.

On December 15, 2016, Mr. Shadix called Ms. Cortez and told her that she was terminated effective December 10, 2016. He never informed Ms. Cortez that the medical documentation she provided was inadequate, nor did he request any additional documentation. Mr. Shadix also informed Ms. Cortez that he would process a post-termination worker's compensation claim.

g. Chipotle's Stated Reasons for Ms. Cortez' Termination.

Mr. Shadix testified at his deposition that the sole reason he terminated Ms. Cortez was her failure to return from leave. Mr. Shadix also expressly testified that Ms. Cortez was not terminated because of her job performance; and was not terminated for failure to provide medical documentation. Mr. Shadix subsequently stated in declarations signed under penalty of perjury that he fired Ms. Cortez because: (1) she failed to provide medical documentation justifying her need for leave; (2) she failed to return at the end of her leave; and (3) "we needed to have her position filled." Chipotle asserts that it intends to argue at trial that Ms. Cortez was terminated because: (1) she failed to return from leave; (2) she failed to provide medical documentation; and (3) her work performance.

II. POINTS OF LAW

a. Ms. Cortez Will Establish a Prima Facie Case for Discrimination, and Present Evidence that Chipotle Discriminates Against Employees who Seek PDL Leave.

In order to prevail on a FEHA discrimination claim, a plaintiff must produce evidence sufficient to show that an illegitimate criterion was a substantial factor in

THE GREEN LAW GROUP, LLP

the particular employment decision. *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 233 (2016). A prima facie case of employment discrimination may be established through direct evidence of discriminatory intent or a presumption arising from a showing of objective factors such as those outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007); *Moore*, 248 Cal. App. 4th at 234. The *McDonnell Douglas* test "reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." *Moore*, 248 Cal. App. 4th at 234. "The test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." *Id.*

At trial, the plaintiff has the initial burden to establish a prima facie case of discrimination. *Moore*, 248 Cal. App. 4th at 234. The plaintiff can meet this burden "by presenting evidence that demonstrates, even circumstantially or by inference, that he or she (1) suffered from a disability, or was regarded as suffering from a disability, (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Id.* at 234-35. "The prima facie burden is light; the evidence necessary to sustain the burden is minimal." *Id.* at 235. If the plaintiff establishes a prima facie case, a presumption of discrimination arises. *Id.*

Ms. Cortez will establish a prima facie case of discrimination by presenting evidence that she had a miscarriage, suffered from depression as a result of the miscarriage, and was granted 12 weeks of FMLA leave because Chipotle regarded her as having a pregnancy related disability. Ms. Cortez will also present evidence that she requested additional leave for which she was eligible under PDL or CFRA, would have been able to do all of the essential functions of her job had Chipotle granted the additional leave, and that Chipotle terminated her employment because

**THE GREEN LAW GROUP, LLP**

she requested additional leave under PDL.

       b. <u>Chipotle Cannot Rebut the Presumption of Discrimination Because It Has Not Alleged a Lawful Basis for Ms. Cortez's Termination.</u>

In order to overcome the presumption of discrimination under *McDonnell Douglas*, Chipotle must produce admissible evidence, sufficient to raise a genuine issue of fact and to justify a judgment for the employer that its action was taken for a legitimate, nondiscriminatory reason. *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 235 (2016). A central issue in this case is therefore whether Ms. Cortez was on or entitled to job protected leave at the time of her termination. If Ms. Cortez was on or entitled to job-protected leave at the time of her termination, all of Chipotle's stated reasons for her termination are unlawful. And even if Ms. Cortez was not entitled to additional job-protected leave, her termination may still be unlawful if Chipotle did not comply with the requirements of the various leave laws.

It is undisputed that Ms. Cortez was granted 12 weeks of FMLA leave after she had a miscarriage. It is also undisputed that before the 12 weeks of leave expired, Ms. Cortez requested additional leave, was granted additional leave, and that Chipotle subsequently rescinded the additional leave. Chipotle alleges that at the time it terminated Ms. Cortez, she had used up all her available job protected leaved under FMLA and CFRA, and that any additional leave was non-protected personal leave. Chipotle also alleges that Ms. Cortez was lawfully terminated for her failure to provide medical certification establishing her need for leave, or her failure to provide a fitness-for-duty certification authorizing her return to work. Ms. Cortez alleges that at the time of her termination, she was still entitled to job-protected leave under PDL and CFRA. She also alleges that she produced medical certification upon Chipotle's request and was never informed that it was inadequate, and that Chipotle did not require her to provide a fitness for duty certification when they granted her FMLA leave.

THE GREEN LAW GROUP, LLP

*i. Overview of FMLA, CFRA, and PDL Leave.*

California and federal law allow employees to take several forms of leave to accommodate disabilities and other medical conditions.  Relevant to this action is the leave allowed by the federal Family & Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the state Fair Employment and Housing Act of 1959, as amended ("FEHA"), Cal. Gov. Code § 12900, *et seq.*

FMLA allows an employee to take up to 12 weeks of leave during any 12-month period for various reasons, including: (1) because of the birth of a child or in order to care for such child; (2) in order to care for a spouse, child, or parent who has a serious health condition; or (3) because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a)(1).

FEHA provides two forms of leave: California Family Rights Act ("CFRA") leave, Cal. Gov. Code § 12945.2, and Pregnancy Disability Leave ("PDL"), Cal. Gov. Code § 12945.  PDL allows an employee to take up to 17 and 1/3 weeks of leave per pregnancy if she is disabled by pregnancy, childbirth, or a related medical condition. Cal. Gov. Code § 12945(a)(1); Cal. Code Regs. tit. 2, § 11042(a)(1).  An employee is "disabled by pregnancy" if, in the opinion of her health care provider, she is unable because of pregnancy to perform any one or more of the essential functions of her job or to perform any of these functions without undue risk to herself, to her pregnancy's successful completion, or to other persons.  Cal. Code Regs. tit. 2, § 11035(f).  An employee is disabled by a "related medical condition" if she has a medically recognized physical or mental condition related to pregnancy, childbirth or recovery from pregnancy or childbirth, including but not limited to post-partum depression, loss or end of pregnancy, or recovery from loss or end of pregnancy.  Cal. Code Regs. tit. 2, § 11035(u).

CFRA allows an employee to take up to 12 weeks of leave for various reasons, including: (1) to bond with a child after birth or to care for the serious health

condition of a child of the employee; (2) to care for a parent or a spouse who has a serious health condition; or (3) because of an employee's own serious health condition that makes the employee unable to perform the functions of the position of that employee, except for leave taken for disability on account of pregnancy, childbirth, or related medical conditions.  Cal. Gov. Code § 12945.2(c)(3).

> ii. *Ms. Cortez Could not Lawfully be Terminated Based on Chipotle's Need to Fill her Position Because She Was on a Job Protected Leave When She Was Terminated, and She Requested Additional Leave for which She was Eligible.*

The employer is responsible in all circumstances for properly designating CFRA and FMLA leave, and for giving notice of the designation to the employee. *Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003); 29 C.F.R. § 825.302(c); Cal. Code Regs. tit. 2, § 11091(a)(1)(A).  Improperly designating leave deprives an employee of rights.  *Liu*, 347 F.3d at 1135.

Each type of leave requires an employer to reinstate an employee at the conclusion of their leave.  Cal. Code Regs., tit. 2, § 11043 [PDL]; 29 C.F.R. § 825.214 [FLSA]; Cal. Code Regs., tit. 2, § 11089 [CFRA].  If a definite date of reinstatement has been agreed upon at the beginning of CFRA or PDL leave, an employer must reinstate by the agreed upon date.  Cal. Code Regs., tit. 2, §§ 11043(b)(1) & 11089(c)(1).  If the reinstatement date differs from the employer's and the employee's original agreement, or if no agreement was made, the employer shall reinstate the employee within two business days after the employee notifies the employer of her readiness to return, or "as soon as it is possible for the employer to expedite the employee's return."  Cal. Code Regs., tit. 2, §§ 11043(b)(2) & 11089(c)(2).  Under the FMLA, it is the employer's burden of proving it had a legitimate reason for not reinstating an employee.  *Sanders v. City of Newport*, 657 F.3d 772, 779 (9th Cir. 2011).

Leave under FMLA, CFRA, and PDL is calculated based on the employee's

THE GREEN LAW GROUP, LLP

PLAINTIFF'S TRIAL BRIEF

normally scheduled workweek.  Cal. Code Regs., tit. 2, §§ 11042(a)(3) & 11087(s); 29 C.F.R. § 825.200.  CFRA and PDL leave are separate rights and are taken consecutively.  Cal. Code Regs. tit. 2, § 11046(a).  FMLA leave runs concurrently with PDL and CFRA leave.  Cal. Code Regs. tit. 2, §§ 11045(a) & 11096.

Here, it undisputed that Ms. Cortez was granted 12 weeks of FMLA and CFRA leave on or about September 17, 2016, following her miscarriage.  There was no agreed upon return date when Chipotle originally granted leave, but a date was agreed upon on December 9, 2016, when Ms. Cortez requested and was granted additional leave.  The agreed upon return date was January 23, 2017.  Chipotle subsequently rescinded the grant of additional leave, and told Ms. Cortez she must return by December 16, 2016, or be terminated.  Ms. Cortez agreed to return by that date.  Chipotle therefore had an obligation to reinstate Ms. Cortez on December 16, 2016, or as soon as possible thereafter, and could not have lawfully terminated her prior to that date because they needed to fill her position.

Chipotle will argue that Ms. Cortez was lawfully terminated effective December 10, 2016, because that was the date she was required to return from FMLA leave, and that any additional leave granted thereafter was non-protected "personal" leave.  This argument has no merit because misclassifying leave as "personal leave" is unlawful.  See *Liu*, 347 F.3d at 1135 (9th Cir. 2003) (Finding that an employer's designation of protected leave as "personal leave" deprived an employee of rights by subjecting her "to the control and discretion of her supervisor in taking leave she had a statutory right to take.")  It is also undisputed that Ms. Cortez's Ob/Gyn recommended she be off work through at least September 30, 2016.  It is therefore beyond dispute that Ms. Cortez was "disabled by pregnancy" for at least the first two weeks of her leave, and therefore was not eligible for CFRA leave during that period.  Consequently, at the time Ms. Cortez was terminated, she was eligible for at least 5 and 1/3 weeks of additional leave

THE GREEN LAW GROUP, LLP

under PDL, and at least two more weeks of leave under CFRA.[1]

          *iii.*   *Ms. Cortez Could not Lawfully be Terminated for Failure to Provide Medical Certification Because She Provided Medical Certification Upon Chipotle's Requests, and Chipotle Never Informed her That the Documents Provided Were Inadequate.*

As a condition of granting FMLA, CFRA, or PDL leave, the employer may require written medical certification.  2 Cal.Code Reg. §§ 11050(b), 11091(b)(2); 29 C.F.R. § 825.305.  The employer must notify the employee of the need to provide medical certification; the deadline for providing certification; what constitutes sufficient medical certification; and the consequences for failing to provide medical certification.  *Id.*  The request to provide medical certification should be made within five days of a request for leave under FMLA, 29 C.F.R. § 825.305(b), or two days of a request for leave under PDL.  2 Cal.Code Reg. § 11050(b)(3).  An employer must give an employee at least 15 days to provide the certification.  2 Cal.Code Reg. §§ 11050(b), 11091(b)(3); 29 C.F.R. § 825.305(b).  If medical certification provided by an employee is deficient, the employer must notify the employee of the deficiency and provide a reasonable opportunity to cure.  2 Cal.Code Reg. §§ 11050(b)(4), 11096; 29 C.F.R. § 825.305(c).  Under FMLA and CFRA, reasonable opportunity to cure means the employer must provide the employee at least 7 days to submit adequate certification.  2 Cal.Code Reg. § 11096; 29 C.F.R. § 825.305(c).

Here, Chipotle did not require Ms. Cortez to provide medical certification when it initially granted leave.  Mr. Shadix requested "medical documentation" on December 13, 2016, after Ms. Cortez requested additional leave, and gave her less than 24 hours to provide the documentation.  Mr. Shadix did not inform Ms. Cortez

---

[1] Ms. Cortez believes the evidence will show that all 12 weeks of her approved leave would have been properly classified under California law as PDL, and therefore, she did not use any leave under CFRA.

THE GREEN LAW GROUP, LLP

what constitutes sufficient medical certification, nor did he notify her that she would be terminated if she failed to provide the certification.  Mr. Shadix also did not notify Ms. Cortez that the documents she provided on December 14, 2016, were inadequate.  Accordingly, Chipotle could not lawfully terminate Ms. Cortez based on any alleged failure of her to provide medical documentation.

### iv.   Ms. Cortez Could not Lawfully be Terminated for Failure to Provide a Fitness for Duty Certification.

FMLA allows an employer to enforce a "a uniformly-applied policy or practice that requires all similarly-situated employees (i.e., same occupation, same serious health condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work."  29 C.F.R. § 825.312(a).  In order to require a fitness for duty certification, the employer must notify the employee at the time it designates FMLA leave that "it will require a fitness-for-duty certification to return to work and whether that fitness-for-duty certification must address the employee's ability to perform the essential functions of the employee's job."  29 C.F.R. § 825.312(d).  An employer cannot refuse to reinstate an employee if it failed to provide the required notice.  29 C.F.R. § 825.312(d).

When Chipotle designated Ms. Cortez's FMLA leave, the designation memorandum did not require a fitness-for-duty certification.  Accordingly, Chipotle could not lawfully terminate Ms. Cortez based on any alleged failure of her to provide a fitness-for-duty certification.

### c.   Chipotle Cannot Pursue its Avoidable Consequences Doctrine Affirmative Defense.

In its Memorandum of Contentions of Facts and Law, Chipotle alleges that it intends to pursue four "affirmative defenses wherein they maintain the burden of proof."  Ms. Cortez alleges that one of the affirmative defenses, Avoidable Consequences Doctrine, is not applicable and requests that the jury not be

THE GREEN LAW GROUP, LLP

1    instructed on this defense.

2         Chipotle intends to argue, and provide instructions to the jury (CACI 2526),

3    that Defendants are not responsible for some or all of the harm to Ms. Cortez

4    because she could have avoided the harm.  The instruction is based on the

5    Avoidable Consequences Doctrine, which provides: "'[O]ne injured by the tort of

6    another is not entitled to recover damages for any harm that he could have avoided

7    by the use of reasonable effort or expenditure after the commission of the tort.'"

8    *State Dept. of Health Services v. Superior Court*, 31 Cal.4th 1026, 1042-43 (2003)

9    (*quoting* Rest.2d Torts, § 918, subd. (1).)

10        Ms. Cortez objects to this instruction, and any argument based thereon,

11   because the Avoidable Consequences Doctrine is only applicable to sexual

12   harassment causes of action, and possibly cases involving a constructive discharge.

13   *See Rosenfeld v. Abraham Joshua Heschel Day School, Inc.*, 226 Cal. App. 4th

14   886, 900-901 (2014) (applying the doctrine to a constructive discharge age

15   discrimination claim).  This is so because sexual harassment (and possibly other

16   forms of discrimination that leads to constructive discharge) are the only causes of

17   action where the wrongful conduct can be addressed before any adverse

18   employment action.

19        For example, in a sexual harassment case, an employee can potentially avoid

20   harassing conduct rising to a severe and pervasive level by reporting the conduct to

21   management before it become severe and pervasive.  Similarly, in a constructive

22   discharge case, an employee can potentially avoid harassing or discriminatory

23   conduct rising to a severe and pervasive level that would constitute a constructive

24   discharge by reporting the conduct to management.

25        Here, the wrongful conduct was Ms. Cortez's termination.  There is nothing

26   that could have been done after Ms. Cortez was terminated that would have

27   avoided the termination.  It should be noted that there are potentially things that

28   Ms. Cortez could have done after her termination to reduce (i.e. mitigate) any

THE GREEN LAW GROUP, LLP

damages that resulted from her termination.  Chipotle has asserted an affirmative defense of failure to mitigate, and Ms. Cortez does not object to Chipotle pursuing that defense.  The court should not allow Chipotle to conflate the Avoidable Consequences Doctrine with the Failure to Mitigate Affirmative Defense.

### III.   CONCLUSION

For the reasons stated herein, and based on the authorities provided is her Memorandum of Contentions of Facts and Law,  Ms. Cortez believes that the evidence will establish a prima facie case for discrimination, and that Chipotle's states reasons for her termination are mere pretexts.


DATED: February 5, 2019          **THE GREEN LAW GROUP, LLP**

By:  /s/ Matthew T. Bechtel
       Scott Thomas Green
       Jamie N. Stein
       Matthew T. Bechtel
       Attorneys for Plaintiff Lucia Cortez

THE GREEN LAW GROUP, LLP